1  COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2  PATRICK J. COUGHLIN (111070)
   HENRY ROSEN (156963)
3  TOR GRONBORG (179109)
   JEFFREY D. LIGHT (159515)
4  JENNIFER Y. LAI (228117)
   655 West Broadway, Suite 1900
5  San Diego, CA 92101
   Telephone: 619/231-1058
6  619/231-7423 (fax)
   patc@csgrr.com
7  henryr@csgrr.com
   torg@csgrr.com
8  jeffl@csgrr.com
   jlai@csgrr.com
9
   BERNSTEIN LITOWITZ BERGER &
10     GROSSMANN LLP                           COHEN MILSTEIN SELLERS
   DAVID R. STICKNEY (188574)                     & TOLL PLLC
11 NIKI L. MENDOZA (214646)                    DANIEL S. SOMMERS
   MATTHEW P. JUBENVILLE (228464)              MATTHEW B. KAPLAN
12 TAKEO A. KELLAR (234470)                    1100 New York Avenue, N.W.
   12481 High Bluff Drive, Suite 300           West Tower, Suite 500
13 San Diego, CA 92130                         Washington, DC 20005-3964
   Telephone: 858/793-0070                     Telephone: 202/408-4600
14 858/793-0323 (fax)                          202/408-4699 (fax)
   davids@blbglaw.com                          dsommers@cohenmilstein.com
15 nikim@blbglaw.com                           mkaplan@cohenmilstein.com
   matthewj@blbglaw.com
16 takeok@blbglaw.com

17 Co-Lead Counsel for Plaintiffs

18              UNITED STATES DISTRICT COURT

19             SOUTHERN DISTRICT OF CALIFORNIA

20 In re DURA PHARMACEUTICALS, INC.    )  Master File No. 99-CV-0151-L(WMC)
   SECURITIES LITIGATION               )
21 _____ )  CLASS ACTION
                                       )
22 This Document Relates To:           )  LEAD PLAINTIFFS' MEMORANDUM OF
                                       )  POINTS AND AUTHORITIES IN SUPPORT
23      ALL ACTIONS.                   )  OF MOTION FOR FINAL APPROVAL OF
                                       )  SETTLEMENT AND PLAN OF
24 _____ )  ALLOCATION OF SETTLEMENT
                                          PROCEEDS
25
                                          DATE:      December 3, 2009
26                                        TIME:      1:30 p.m.
                                          COURTROOM:  The Honorable
27                                                    Janis L. Sammartino

28

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ........................................................................1

II.   THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
      ACTION SETTLEMENTS ...........................................................................4

III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..............................6

      A.    The Strength of Lead Plaintiffs' Case When Balanced Against the Risk,
            Expense, Complexity, and Likely Duration of Further Litigation Supports
            Approval of the Settlement ...........................................................................6

            1.    The Risks of Proving Liability....................................................7

            2.    The Risks of Proving Damages...................................................9

            3.    The Complexity, Expense, and Likely Duration of the Litigation
                  Justifies the Settlement ...............................................................10

      B.    Lead Plaintiffs Have Engaged in Sufficient Pretrial Discovery and
            Proceedings to Identify the Strengths and Weaknesses of Their Case and
            the Propriety of Settlement ........................................................................11

      C.    The Recommendations of Experienced Counsel After Extensive Litigation
            and Arm's-Length Settlement Negotiations Favor the Approval of the
            Settlement ...............................................................................................12

      D.    The Risks of Maintaining the Class Action Through Trial Support the
            Settlement ...............................................................................................12

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................13

V.    CONCLUSION...........................................................................................14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978)..................................................................................13

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) ....................................................................5, 6

*Bryant v. Avado Brands, Inc.,*
    100 F. Supp. 2d 1368 (M.D. Ga. 2000),
    *rev'd on other grounds and remanded sub nom.*
    *Bryant v. Dupree,* 252 F.3d 1161 (11th Cir. 2001)............................................6

*Church v. Consol. Freightways, Inc.,*
    No. C-90-2290-DLJ, 1993 U.S. Dist. LEXIS 6439
    (N.D. Cal. May 3, 1993) .......................................................................................4

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)..............................................................................................9

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980),
    *aff'd,* 661 F.2d 939 (9th Cir. 1981)....................................................................5

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975)..................................................................................6

*In re Apollo Group, Inc. Sec. Litig.,*
    No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995
    (D. Ariz. Aug. 4, 2008) .........................................................................................9

*In re Chicken Antitrust Litig. Am. Poultry,*
    669 F.2d 228 (5th Cir. 1982) ..............................................................................13

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    No. MDL 901, 1992 U.S. Dist. LEXIS 14337
    (C.D. Cal. June 10, 1992) ...................................................................................12

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
    142 F.R.D. 588 (S.D.N.Y. 1992) .......................................................................13

*In re Ikon Office Solutions, Inc.,*
    194 F.R.D. 166 (E.D. Pa. 2000).................................................................6, 10, 13

99-CV-0151-L(WMC)

1

2                                                                                          **Page**

3  *In re Indep. Energy Holdings PLC*,
        No. 00 Civ. 6689(SAS), 2003 WL 22244676
4       (S.D.N.Y. Sept. 29, 2003) ................................................................................5

5  *In re Mego Fin. Corp. Sec. Litig.*,
        213 F.3d 454 (9th Cir. 2000) .................................................................11, 12
6

7  *In re Pac. Enters. Sec. Litig.*,
        47 F.3d 373 (9th Cir. 1995) ...............................................................................4
8

9  *In re Warner Commc'ns Sec. Litig.*,
        618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*,
10      798 F.2d 35 (2d Cir. 1986)...............................................................................6

11 *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
        720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
12      *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......................4, 12, 13

13 *Lewis v. Newman*,
        59 F.R.D. 525 (S.D.N.Y. 1973) ...........................................................................6
14

15 *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
        671 F. Supp. 819 (D. Mass. 1987) .......................................................................5
16

17 *Marshall v. Holiday Magic, Inc.*,
        550 F.2d 1173 (9th Cir. 1977) .............................................................................4

18 *Milstein v. Huck*,
        600 F. Supp. 254 (E.D.N.Y. 1984) ....................................................................10
19

20 *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
        797 F.2d 799 (9th Cir. 1986) ...............................................................................4

21 *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
        221 F.R.D. 523 (C.D. Cal. 2004)....................................................................6, 12
22

23 *Officers for Justice v. Civil Serv. Comm'n*,
        688 F.2d 615 (9th Cir. 1982) .................................................................4, 5, 10, 11
24

25 *Republic Nat'l Life Ins. Co. v. Beasley*,
        73 F.R.D. 658 (S.D.N.Y. 1977) ...........................................................................6

26 *Reynolds v. Beneficial Nat'l Bank*,
        288 F.3d 277 (7th Cir. 2002) ............................................................................11
27

28

1

2                                                                              **Page**

3  *Robbins v. Koger Props., Inc.,*
        116 F.3d 1441 (11th Cir. 1997) ...................................................................9
4

5  *Torrisi v. Tucson Elec. Power Co.,*
        8 F.3d 1370 (9th Cir. 1993) .................................................................4, 5
6

7  *Util. Reform Project v. Bonneville Power Admin.,*
        869 F.2d 437 (9th Cir. 1989) ...................................................................4

8  *Van Bronkhorst v. Safeco Corp.,*
        529 F.2d 943 (9th Cir. 1976) ...................................................................4
9

10  *Weinberger v. Kendrick,*
        698 F.2d 61 (2d Cir. 1982).......................................................................4
11

12  *White v. NFL,*
        822 F. Supp. 1389 (D. Minn. 1993)........................................................13

13  *Williams v. First Nat'l Bank,*
        216 U.S. 582 (1910)..................................................................................4
14

15  *Woo v. Home Loan Group, L.P.,*
        No. 07-CV-202 H (POR), 2008 WL 3925854
16      (S.D. Cal. Aug. 25, 2008) .....................................................................4, 5

17  **STATUTES, RULES AND REGULATIONS**

18  Federal Rules of Civil Procedure
        Rule 23 ....................................................................................................13
19      Rule 23(e).............................................................................................1, 4

20

21

22

23

24

25

26

27

28

1  **I.      PRELIMINARY STATEMENT**

2           Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs submit this

3  memorandum in support of their motion for final approval of the settlement of this Litigation for

4  $14,000,000.00 in cash and approval of the Plan of Allocation of settlement proceeds.  The terms of

5  the settlement are set forth in the Stipulation of Settlement dated as of March 20, 2009 (the

6  "Stipulation"), which has been previously submitted to the Court.  The settlement is the result of

7  arm's-length settlement negotiations with the substantial assistance of Antonio Piazza, a highly

8  respected mediator with extensive experience in the mediation of complex civil actions.  Lead

9  Counsel believe that the settlement is a highly favorable result and merits the approval of the Court.

10          This case was carefully investigated and has been vigorously litigated since its

11  commencement in January 1999.[1]  Defendants have asserted aggressive defenses and expressed their

12  belief that Lead Plaintiffs should not prevail on the claims asserted.  Lead Counsel thoroughly

13  reviewed and analyzed all publicly available relevant information regarding Dura Pharmaceuticals,

14  Inc. ("Dura" or the "Company"), including, but not limited to, its Securities and Exchange

15  Commission ("SEC") filings; financial statements; press releases; reports about the Company;

16  analysts' reports and notes rendered by securities firms; and all United States Food and Drug

17  Administration ("FDA") public notes about the Company.  Considerable resources were also

18  devoted to locating and interviewing witnesses with knowledge of Dura and Lead Plaintiffs'

19  allegations.  Lead Counsel, with the assistance of in-house and private investigators, located and

20  interviewed scores of potential witnesses, including numerous former Dura employees.  In addition,

21  Lead Counsel consulted with in-house and outside experts in accounting, damages, materiality, loss

22  causation, and mergers and acquisitions; researched the law pertinent to the claims and potential

23  defenses; filed four amended fact-specific complaints; litigated four rounds of Defendants' motions

24  _____

25  [1]      The Court is respectfully referred to the accompanying Joint Declaration of Henry Rosen,
    David Stickney, and Daniel S. Sommers in Support of Motion for Final Approval of Settlement and
26  Plan of Allocation of Settlement Proceeds; and Award of Attorneys' Fees and Expenses ("Joint
    Declaration") for a more detailed history of the Litigation, the extensive efforts of counsel, and the
27  factors bearing on the reasonableness of the settlement, Plan of Allocation, and award of attorneys'
    fees and expenses.

28

1   to dismiss; researched, briefed, and argued an appeal to the Ninth Circuit Court of Appeals and

2   subsequently before the United States Supreme Court; and conducted formal discovery including,

3   the review and analysis of over 200,000 pages of documents.   Lead Counsel also engaged in

4   extensive arm's-length settlement negotiations, including two full days of mediation, with Mr.

5   Piazza.

6        As discussed herein and in the accompanying Joint Declaration, Lead Plaintiffs faced

7   significant risks in obtaining a favorable outcome after continued litigation.   For example, Lead

8   Plaintiffs were faced with the formidable task of proving that Defendants made materially false

9   statements with the requisite scienter.   Defendants vehemently denied liability throughout the

10  Litigation, asserting that the statements Lead Plaintiffs alleged were false, were not actionable

11  because Defendants disclosed the very facts that Lead Plaintiffs alleged were omitted, or the

12  statements were statements of optimism which the market could not rely on, or the statements were

13  forward looking statements protected by the Private Securities Litigation Reform Act of 1995

14  ("PSLRA"), thus absolving them of any liability under the federal securities laws.   Moreover, as a

15  result of the significant time between the events of interest and any deposition or trial, the ability, as

16  well as willingness, of many witnesses to testify competently about those events would be impaired

17  and many of the additional documents Lead Plaintiffs would seek to be produced would either be

18  lost or otherwise unavailable for production.   In short, Lead Plaintiffs faced numerous obstacles in

19  proving both liability and damages if litigation continued.     There was no certainty, given

20  Defendants' vigorously asserted defenses, that Lead Plaintiffs and the Settlement Class would

21  prevail on either liability or damages.   The settlement eliminates these and many other risks of

22  continued litigation.

23       Lead Counsel, who are well-respected and highly experienced in prosecuting securities fraud

24  class actions, have concluded that the settlement is a very good result under the circumstances and is

25  in the best interest of the Settlement Class. This conclusion is based on all the circumstances present

26  here, including the substantial risks, expense, and uncertainties in continuing the Litigation through

27  summary judgment, trial, and probable appeal, the relative strengths and weaknesses of the claims

28  and defenses asserted, a complete analysis of the evidence obtained and the legal and factual issues

1   presented, past experience in litigating complex actions similar to the present action, and the serious

2   disputes between the parties concerning the merits and damages.  It was only after Lead Counsel

3   were satisfied that the potential for a greater recovery for the Settlement Class was limited due to the

4   significant amount of time between the events complained of and any possible trial, issues

5   concerning the potential materiality of the alleged fraud, possible limitations on damages, and the

6   significant hurdles that would be faced at both summary judgment and trial, that they entered into the

7   settlement.

8         While the deadline for filing objections has not yet passed, members of the Settlement Class

9   appear to agree with Lead Counsel's conclusion.  Pursuant to an Order of the Court dated July 31,

10  2009, copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice")

11  were mailed to over 17,300 potential Settlement Class Members.[2]  In addition, a Summary Notice

12  was published in *Investor's Business Daily*.  The Claims Administrator also established a case-

13  specific website which includes general information about the case, its current status and documents,

14  including the Notice and Proof of Claim and Release form which can be downloaded.  Schachter

15  Aff., ¶¶13-15.  The Notice informed potential Settlement Class Members of the terms of the

16  settlement, their right to object or opt out of the settlement, the Plan of Allocation of settlement

17  proceeds ("Plan of Allocation"), and counsel's request for an award of attorneys' fees and expenses.

18  The deadline for objecting is November 3, 2009.  To date, not a single Settlement Class Member has

19  objected to any aspect of the settlement, Plan of Allocation, or Lead Counsel's request for an award

20  of attorneys' fees and expenses.

21        For all of the reasons discussed herein and in the Joint Declaration, it is respectively

22  submitted that the settlement is eminently fair, reasonable, and adequate to the Settlement Class and

23  should be approved by the Court.  Moreover, the Plan of Allocation was developed by Lead

24  Plaintiffs' damage experts and tracks the theory of damages asserted and is necessarily fair,

25  reasonable, and adequate and should be approved.

26  _____

27  [2]    *See* paragraphs 9 through 12 to the Affidavit of Eric Schachter, Esq. ("Schachter Aff."), submitted herewith.

28

## II.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).   Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[3]  In deciding whether to approve a proposed settlement of a stockholders' class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "'fair, adequate, and reasonable.'"[4]   The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.   The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted).  *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Woo v. Home Loan Group, L.P.*, No. 07-CV-202 H (POR), 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008) (Huff, J.); *Church v. Consol. Freightways, Inc.*, No. C-90-2290-DLJ, 1993 U.S. Dist. LEXIS 6439 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power*

---

[3]    The law consistently favors the compromise of disputed class action claims. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

[4]    *Pac. Enters.*, 47 F.3d at 377 (citation omitted); *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

1  *Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ("*WPPSS*"), *aff'd sub nom. Class*

2  *Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). "'The relative degree of importance to be

3  attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s)

4  of relief sought, and the unique facts and circumstances presented by each individual case.'" *Home*

5  *Loan Group*, 2008 WL 3925854, at *3 (quoting *Officers for Justice*, 688 F.2d at 625).

6        The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval*

7  *Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*,

8  8 F.3d at 1375. In exercising its discretion, "the court's intrusion upon what is otherwise a private

9  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

10 necessary to reach a reasoned judgment that the agreement is not the product of fraud or

11 overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

12 whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The

13 Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

14     [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for
    trial on the merits. Neither the trial court nor this court is to reach any ultimate

15     conclusions on the contested issues of fact and law which underlie the merits of the
    dispute, for it is the very uncertainty of outcome in litigation and avoidance of

16     wasteful and expensive litigation that induce consensual settlements. The proposed
    settlement is not to be judged against a hypothetical or speculative measure of what

17     ***might*** have been achieved by the negotiators.

18 *Id.* (emphasis in original).

19       Moreover, where, as here, a proposed class settlement has been reached after arm's-length

20 negotiation conducted by capable counsel, it is presumptively fair. *See Boyd v. Bechtel Corp.*, 485

21 F. Supp. 610, 622 (N.D. Cal. 1979) ("the recommendations of plaintiffs' counsel should be given a

22 presumption of reasonableness."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp.

23 819, 822 (D. Mass. 1987).[5]

24

25 _____

26 [5]   *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4
(S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length

27 negotiations, with the assistance of a private mediator experienced in complex litigation, is further
proof that it is fair and reasonable").

28

III.     **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

    A.     **The Strength of Lead Plaintiffs' Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement**

In determining whether the proposed settlement is fair, reasonable, and adequate, the Court should balance against the continuing risks of litigation, the benefits afforded to the Settlement Class and the immediacy and certainty of a substantial recovery. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 616-17; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). In other words,

> "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'"

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977). This is even more so today in this post-PSLRA environment amid defendants' constant attempts to push the envelope and contours of the PSLRA. *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). As one court noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds and remanded sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

While Lead Counsel believe that the Litigation has significant merit, they recognize that Lead Plaintiffs faced numerous risks and uncertainties and were well aware that many other similar actions have been prosecuted in the belief that they were meritorious, only to lose on dispositive motions, at trial, or on appeal. The settlement recognizes the risks of complex litigation involving

1   difficult legal and factual issues.  As discussed herein and in the Joint Declaration, the risks of

2   continued litigation when weighed against the substantial and certain recovery for the Settlement

3   Class confirms the reasonableness of the settlement.  The settlement is unquestionably better than

4   another distinct possibility – no or little recovery for the Settlement Class.

5                          **1.     The Risks of Proving Liability**

6        Lead Plaintiffs' case centered on allegations that Defendants made false and misleading

7   statements about the development of the Spiros drug delivery system for Albuterol, a new type of

8   asthma inhaler, and the sales of Ceclor CD, an antibiotic drug prescribed to treat respiratory

9   illnesses.  Lead Plaintiffs believe that based on the evidence adduced to date, including interviews

10  with former Dura employees and customers, they had a strong case as to liability and would be able

11  to prove that Defendants made false and misleading statements about the Company's ability to bring

12  to market the Spiros drug delivery system because Defendants knew that the Spiros inhaler suffered

13  from significant development problems from its inception and the Company had changed the

14  configurations of the inhaler, thus invalidating the clinical trials.  Similarly, Lead Plaintiffs believe

15  they would be able to prove that Defendants knew the statements about the success of the Ceclor CD

16  were false and misleading because internal Company projections showed sales of the drug were

17  either flat or dropping throughout the Settlement Class Period.

18       While Lead Plaintiffs believe that their claims are strong, getting past summary judgment and

19  establishing liability at trial would by no means be guaranteed.  Defendants have adamantly denied

20  any liability and have asserted from the outset of the Litigation that they possess absolute defenses to

21  Lead Plaintiffs' claims.  For example, Defendants would continue to argue that Dura disclosed in

22  multiple SEC filings that it had made modifications to the Spiros system, that it had encountered

23  problems with the mechanical features of the Spiros system, and there was a risk that the FDA would

24  require Dura to repeat one or more of its trials.  Defendants argued that these disclosures to the

25  market absolved them of any liability.  With respect to the Ceclor CD statements, Defendants would

26  continue to argue that the statements alleged to be false were non-actionable statements of optimism

27  or forward looking statements which are immunized under the PSLRA.  Defendants would further

28  argue that the Company was not required to disclose the internal projections that Lead Plaintiffs

1    allege support their claims.  Even if Lead Plaintiffs established the falsity of the statements, they
2    would also need to prove that the Defendants acted with the requisite scienter.  The difficulty of
3    proving scienter cannot be underestimated as proof of scienter is always complex.

4           Although Lead Plaintiffs believe that they would present sufficient evidence to support their
5    claims, Lead Plaintiffs were aware that Defendants would present counter evidence and other
6    substantial obstacles to obtaining a judgment in their favor at trial.  Moreover, there was no certainty
7    that additional discovery would tend to support or disprove Lead Plaintiffs' allegations.  In order to
8    prove their case, Lead Plaintiffs would have to rely on significant testimony from former Dura
9    employees and customers, many of whom would be testifying about matters that occurred more than
10   10 years ago.  As a result of the significant time between the events of interest and any deposition or
11   trial, the ability, as well as willingness, of many witnesses to testify completely about those events
12   would be impaired.  In addition, due to the age of the case, many of the documents that Lead
13   Plaintiffs would seek would either be lost or otherwise unavailable for production.  The fact that
14   Dura no longer exists as the company it was during the Settlement Class Period and was sold to Elan
15   Pharmaceuticals, Inc. more than seven years ago further complicated Lead Plaintiffs' ability to prove
16   their claims and clouded Lead Plaintiffs' ability to collect on any favorable judgment.  These issues
17   would seriously affect Lead Plaintiffs' ability to successfully prosecute their claims.

18          There is no question that the case entailed a number of complex issues.  Assuming Lead
19   Plaintiffs survived Defendants' anticipated motion for summary judgment after completion of
20   discovery, presenting these complex issues to a jury posed a particular risk to Lead Plaintiffs' hopes
21   for success at trial.  Lead Plaintiffs could not be certain that a jury would see through the complexity
22   of the underlying facts to the heart of the alleged fraud.  Moreover, the risks of establishing liability
23   posed by complex issues with conflicting testimony and evidence would be exacerbated by the
24   following risks inherent in all shareholder litigation, including the unpredictability of a lengthy and
25   complex jury trial, the risk that witnesses could be unavailable or jurors could react to the evidence
26   in unforeseen ways, the risk that a jury would find that some or all of the alleged misrepresentations
27   were not material, and the risk that the jury could find that Defendants believed in the
28   appropriateness of their actions at the time.

1                    **2.      The Risks of Proving Damages**

2          Even if plaintiffs were to overcome the significant risks of proving liability, they would still

3    face the risks of proving loss causation and damages.  The issue of loss causation would still be a

4    matter of significant dispute even after the Supreme Court's decision in *Dura Pharms., Inc. v.*

5    *Broudo*, 544 U.S. 336, 346 (2005).  The Supreme Court's decision in *Dura* and the subsequent cases

6    interpreting *Dura* have made proving loss causation even more difficult and uncertain than in the

7    past.  A recent example illustrates this point.  In *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-

8    2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion for

9    judgment as a matter of law overturned a jury verdict in favor of shareholders based on insufficient

10   evidence presented at trial to establish loss causation.

11         The determination of damages is a complicated and uncertain process involving conflicting

12   expert testimony.  Expert testimony could rest on many subjective assumptions, any of which could

13   potentially be rejected by a jury as speculative or unreliable.  Lead Plaintiffs would have likely faced

14   a motion *in limine* by Defendants to preclude Lead Plaintiffs' damage experts' testimony under the

15   *Daubert* test and risked a decision that a valuation model might not be admissible in evidence.  Even

16   if Lead Plaintiffs survived the *Daubert* motion, at trial the loss causation and damage assessments of

17   Lead Plaintiffs' and Defendants' experts were sure to vary substantially, and in the end, this crucial

18   element at trial would be reduced to a "battle of experts."  The reaction of a jury to such expert

19   testimony is highly unpredictable and in such a battle, Lead Counsel recognize the possibility that a

20   jury could be swayed by convincing experts for the Defendants, and find that there were no damages

21   or only a fraction of the amount of damages Lead Plaintiffs contended or to show that the losses

22   were attributable to factors other than the alleged false and misleading statements.  *See, e.g., Robbins*

23   *v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81

24   million jury verdict).

25         While it is possible that the Lead Plaintiffs could present evidence at trial that the aggregate

26   damages exceed the amount of the proposed settlement, that assumes that most, if not all, of the

27   significant liability and damage issues would have been resolved in the Settlement Class's favor.

28   Moreover, even with a judgment in hand, in today's corporate environment there is no guarantee that

1  a significant judgment entered years down the road would be collectable. Therefore, the amount of

2  damages the Settlement Class would actually recover if successful at trial is uncertain.

3          **3.**     **The Complexity, Expense, and Likely Duration of the**
                   **Litigation Justifies the Settlement**

4

5        The immediacy and certainty of a recovery is a factor for the Court to balance in determining

6  whether this proposed settlement is fair, adequate, and reasonable. Courts consistently have held

   that "[t]he expense and possible duration of the litigation should be considered in evaluating the
7
   reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see*
8
   *also Officers for Justice*, 688 F.2d at 626.
9
         Here, Defendants have demonstrated a commitment to defend this case through and beyond
10
   trial, if necessary, and are represented by well-respected and highly capable counsel from Paul,
11
   Hastings, Janofsky & Walker LLP. If not for this settlement, the case would have continued to be
12
   fiercely contested by all parties. The expense and time of continuing litigation would have been
13
   substantial. As the court noted in *Ikon*, which is applicable here:
14
           In the absence of a settlement, this matter will likely extend for . . . years longer with
15         significant financial expenditures by both defendants and plaintiffs. This is partly
           due to the inherently complicated nature of large class actions alleging securities
16         fraud: there are literally thousands of shareholders, and any trial on these claims
           would rely heavily on the development of a paper trial [sic] through numerous public
17         and private documents.

18  194 F.R.D. at 179.

19        The securities claims advanced by Lead Plaintiffs involve complex legal and factual issues,

20  which would require additional document discovery, numerous depositions, and extensive expert

21  discovery and testimony. After completion of discovery, Defendants' expected motion for summary

22  judgment would have to be briefed and argued, a pre-trial order would have to be prepared, proposed

23  jury instructions would have to be submitted, and motions *in limine* would have to be filed and

24  argued. Substantial time and expense would need to be expended in preparing the case for trial. The

25  trial itself would have been long, expensive, and uncertain and no matter the outcome, appeals would

26  be virtually assured. This would add considerably to the expense and duration of the Litigation.

27        The legal issues are equally as complex – proving scienter, causation, and damages, would

28  likely require expert testimony. There exists no doubt that the litigants have been spared significant

1  delay and expense of continued litigation.  Many hours of the District Court's time and resources

2  have also been spared.  Moreover, even if the Settlement Class could recover a larger judgment after

3  a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the

4  Settlement Class any recovery for years, which would further reduce its value.  The settlement, for

5  $14,000,000.00, at this juncture, results in an immediate and substantial tangible recovery, without

6  the considerable risk, expense, and delay of trial and post-trial litigation.  *See Reynolds v. Beneficial*

7  *Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal

8  more than a dollar ten years from now.").

9  **B.      Lead Plaintiffs Have Engaged in Sufficient Pretrial Discovery and**
   **Proceedings to Identify the Strengths and Weaknesses of Their Case**
10  **and the Propriety of Settlement**

11      The stage of the proceedings and the amount of discovery completed – is another factor

12  which the courts consider in determining the fairness, reasonableness, and adequacy of a settlement.

13  *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit has held that "'in the context of class action

14  settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties

15  have sufficient information to make an informed decision about settlement.'"  *In re Mego Fin. Corp.*

16  *Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations omitted).  Here, both the knowledge of Lead

17  Counsel and the proceedings themselves have reached a stage where Lead Counsel could make an

18  intelligent evaluation of the Litigation and propriety of this settlement.

19      As detailed herein and in the Joint Declaration, Lead Counsel conducted significant informal

20  discovery and investigation on the matters alleged, even though throughout much of the litigation,

21  discovery was stayed pursuant to the PSLRA.  The parties also fully briefed four rounds of

22  Defendants' motions to dismiss, an appeal to the Ninth Circuit, and subsequent proceedings before

23  the Supreme Court which further highlighted the factual and legal issues in the Litigation.  The

24  parties further participated in extensive settlement negotiations, including mediation where the

25  strengths and weaknesses of the parties' respective claims and defenses were fully explored.  Thus,

26  at the time of settlement Lead Counsel had a full understanding of the strengths and weaknesses of

27  the Settlement Class's claims, as well as the difficulties they would have faced in obtaining a more

28  favorable result after continued litigation.  Having sufficient information to properly evaluate the

1  case, Lead Counsel have managed to settle the Litigation on terms highly favorable to the Settlement

2  Class. *See Mego Fin.*, 213 F.3d at 459.

3          **C.      The Recommendations of Experienced Counsel After Extensive
                      Litigation and Arm's-Length Settlement Negotiations Favor the**
4                    **Approval of the Settlement**

5          "'Great weight is accorded to the recommendation of counsel, who are most closely

6  acquainted with the facts of the underlying litigation.'" *Nat'l Rural*, 221 F.R.D. at 528 (citation

7  omitted).  Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal

8  authorities and evidence to support the claims asserted against Defendants, the likelihood of

9  prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely

10  appeals and subsequent proceedings necessary if Lead Plaintiffs did prevail against Defendants at

11  trial, have concluded that the settlement is clearly fair, reasonable, and adequate and in the best

12  interest of the Settlement Class.  Lead Counsel have significant experience in securities and other

13  complex class action litigation and have negotiated numerous other substantial class action

14  settlements throughout the country.   Where, as here, the settlement is the product of serious,

15  informed non-collusive negotiations after some ten years of litigation, significant weight should be

16  attributed to the belief of experienced counsel that settlement is in the best interest of the class. *See*

17  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 U.S. Dist. LEXIS

18  14337, at *12 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement

19  represented the most beneficial result for class compelling factor in approving settlement); *WPPSS*,

20  720 F. Supp. at 1392.

21          **D.      The Risks of Maintaining the Class Action Through Trial Support the
                      Settlement**
22

23          This factor also supports the settlement.  Here, a class had not yet been certified.  Therefore,

24  risk existed that the Court would not certify the Settlement Class as defined.  In addition, even if a

25  class were certified upon Lead Plaintiffs' motion (which Defendants would almost certainly contest),

26  there would be no assurance of its maintaining this status since courts may exercise their discretion

27  to re-evaluate the appropriateness of class certification at any time.

28

1   **IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

2          Lead Plaintiffs also seek approval of the Plan of Allocation of the settlement proceeds. The

3   Plan of Allocation is set forth in the Notice mailed to potential Settlement Class Members.

4          Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of

5   the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the

6   settlement as a whole – the plan must be fair, reasonable, and adequate. *See Ikon*, 194 F.R.D. at 184;

7   *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  District courts enjoy "broad

8   supervisory powers over the administration of class-action settlements to allocate the proceeds

9   among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir.

10  1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An

11  allocation formula need only have a reasonable, rational basis, particularly if recommended by

12  "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn.

13  1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

14         The objective of a plan of allocation is to provide an equitable basis upon which to distribute

15  the settlement fund among eligible class members.  Here, the Plan of Allocation was developed by

16  Lead Counsel with the assistance of their damage experts and reflects an assessment of the damages

17  that could have been recovered at trial under the theories asserted in the case by Lead Plaintiffs. The

18  Plan of Allocation will result in a fair distribution of the available proceeds among those Settlement

19  Class Members who submit valid claims and therefore should be approved.

20

21

22

23

24

25

26

27

28

**V.   CONCLUSION**

For all the reasons set forth above and in the Joint Declaration, the proposed settlement and Plan of Allocation warrants this Court's final approval.

DATED:  October 19, 2009

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
HENRY ROSEN
TOR GRONBORG
JEFFREY D. LIGHT
JENNIFER Y. LAI


_____s/Jeffrey D. Light_____
JEFFREY D. LIGHT

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
DAVID R. STICKNEY
NIKI L. MENDOZA
MATTHEW P. JUBENVILLE
TAKEO A. KELLAR


_____s/Niki L. Mendoza_____
NIKI L. MENDOZA

12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: 858/793-0070
858/793-0323 (fax)

COHEN MILSTEIN SELLERS
  & TOLL PLLC
DANIEL S. SOMMERS
MATTHEW B. KAPLAN
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: 202/408-4600
202/408-4699 (fax)

Co-Lead Counsel for Plaintiffs

S:\Settlement\Dura.set\BRF SETTLEMENT 00062168.doc